UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| VIC SASSO, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Case No. 3:20-CV-1398-S |
| § | |
| CITY OF DALLAS, and CITY OF § | |
| DALLAS POLICE DEPARTMENT, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

This is an application for a temporary restraining order regarding Dallas's curfew. George Floyd died under the knee of a Minneapolis police officer on May 25. Protests ensued across the nation. Some turned violent, including in Dallas. The City of Dallas responded with a local disaster declaration from the mayor that paved the way for a curfew in certain areas. After the city manager issued a curfew in Dallas, Sasso filed this application for a temporary restraining order. He argues that the curfew facially violates the First, Fourth, Eighth, and Fourteenth Amendments, and the Commerce Clause in the United States Constitution, as well as the First, Fourth, and Fourteenth Amendments' counterparts in the Texas Constitution. The Court **DENIES** the request for a temporary restraining order because Sasso has failed to meet his burden to show irreparable harm to himself, that the harm of the

curfew of limited geography and duration is worse than the harm of a temporary restraining order, or that the public interest favors the temporary restraining order.

I. Factual Background

The protests that precipitated the curfew at issue in this application occurred on May 29 and 30. The protests devolved into vandalism, looting, and violence.[1]

On May 31, 2020, Texas Governor Greg Abbott declared a state of emergency under section 418.014 of the Texas Government Code. Under section 418.017 of that code, Governor Abbott authorized "the use of all available resources of state government and of political subdivisions that are reasonably necessary to cope with this disaster."[2] Under section 418.016(a), he suspended "all relevant provisions within Chapter 1701 of the Texas Occupations Code, as well as Title 37, Chapters 211–29 of the Texas Administrative Code, to the extent necessary for the Texas Commission on Law Enforcement to allow federal law enforcement officers to perform peace officer duties in Texas" and "any other regulatory statute."[3]

After the Governor's emergency declaration, Dallas Mayor Eric Johnson issued his own emergency proclamation under Chapter 418 of the Texas Government Code.[4] The mayor's emergency proclamation invoked Section 14.B of the Dallas City

---

[1] This application was filed ex parte, which means without traditional notice to the city. The Court relies on the application, the attached disaster declaration, and other government documents of which the Court may take judicial notice.

[2] TEX. GOV'T CODE § 418.017.

[3] "Governor Abbott Declares State of Disaster Following Violent Protests," Office of the Texas Governor, May 31, 2020 (https://gov.texas.gov/news/post/governor-abbott-declares-state-of-disaster-following-violent-protests2).

[4] *See* "Mayor Eric Johnson Issues Proclamation Declaring A Local State of Disaster," City of Dallas, May 31, 2020 (Mayor Eric Johnson on Sunday issued a Proclamation Declaring A Local State

Code, which authorizes the Dallas city manager to, among other powers and duties, "order a curfew into effect in all or any delineated part of the city and to exempt from the curfew any person whose movement is essential to the health, safety, and welfare of the public."[5]  That same afternoon, Dallas City Manager T.C. Broadnax issued Emergency Regulations Ordinance 31544 (curfew ordinance), approved by Dallas City Attorney Christopher J. Caso, detailing the curfew's immediately effective requirements:

> (a) A nighttime curfew is established for the areas described in Exhibit A, which is attached to and made a part of these emergency regulations, including all public places and streets, daily from 7:00 p.m. until 6:00 a.m. the following morning.
>
> (b) During the hours of curfew, all persons must not travel on any public street or be in any public space within the areas described in Exhibit A.
>
> (c) All law enforcement, fire, medical personnel, and members of the news media, as well as other designated persons authorized by the City of Dallas, Dallas Police Department, Dallas County, or the State of Texas are exempt from the curfew.  Individuals traveling to and from work, seeking medical attention or engaging in exempt activities, fleeing dangerous situations, or experiencing homelessness are also exempt.
>
> (d) For purposes of these emergency regulations, "travel" incudes without limitation, travel on foot, bicycle, skateboard, scooter, motorcycle, automobile, or any other mode of transporting a person from one location to another.

---

of Disaster for civil disorder and threats of rioting.  The proclamation allows the city manager, under Section 14B of the Dallas City Code, to issue emergency regulations, including a curfew. The details of those emergency regulations will be announced shortly by the city manager's office. The disaster declaration is set to expire in seven days."). *See generally* Proclamation Declaring a Local State of Disaster, Office of Dallas Mayor Eric Johnson, May 31, 2020 (https://content.govdelivery.com/attachments/TXDALLAS/2020/05/31/file_attachments/1463340/Proclamation_Declaring_A_Local_State_Of_Disaster_-_Rioting-Looting_(George_Floyd's_Death).pdf).

[5] The Dallas City Code § 14B-7 (City Manager – Powers and Duties).

> (e) For purposes of these emergency regulations, "public place" means any place, whether on privately or publicly owned property, accessible to the general public, including but not limited to streets, highways, alleys, sidewalks, vacant lots, parks, public buildings, parking lots, and unsupervised property.[6]

Exhibit A includes the following description of the areas under curfew:

> the area bounded by Riverfront Boulevard to the west, Oak Lawn Avenue to the northwest, Lemmon Avenue to the northeast, Haskell Avenue to the northeast, Main Street to the southeast, Canton Street to the south, Hall Street to the southeast, Malcolm X Boulevard to the northeast, Hickory Street to the southeast, Cesar Chavez Boulevard to the northeast, and Corinth Street to the southwest.[7]

Later that same day, Sasso (a Dallas resident), filed his emergency application for an ex parte temporary restraining order to enjoin and restrain the City of Dallas from enforcing its curfew ordinance [Doc. No. 1].[8]

## II. Legal Background

A court should issue a temporary restraining order if the movant shows:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.[9]

---

[6] Emergency Regulations Ordinance (31544), City of Dallas (May 31, 2020), at 2 (https://dallascityhall.com/DCH_Documents/covid19/Emergency_Regulations_Ordinance_(31544)_-_Rioting-Looting_(George_Floyd's_Death).pdf).

[7] *See id.*, Exhibit A, at 1.

[8] The application for temporary restraining order technically challenged the mayor's disaster declaration. But that declaration wasn't what established the curfew. The city manager's Emergency Regulations Ordinance 31544 (the curfew ordinance) established the curfew. The Court charitably construes the application to challenge that curfew ordinance.

[9] *Paulson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

III.   Application

Even if Sasso's conclusory recitations of constitutional allegations met his burden to show he will prevail on the merits of his claims, Sasso nowhere alleges what irreparable harm will befall him if the curfew remains in effect (nor does he brief whether his cursory allegations of constitutional harm can trigger a presumption of harm under Supreme Court or Fifth Circuit precedent).

But more fundamentally,[10] Sasso must show that the harm of no temporary restraining order will outweigh the harm of having one, and that the temporary restraining order is in the public interest.  Sasso failed to show how the curfew that is only applicable in limited areas of Dallas, for limited times of day, and for limited days is worse (due to constraints on constitutional rights) than what it seeks to cure (vandalism, looting, and violence).  This is no city-wide curfew.  Rather, it is geographically tailored in light of the vandalism, looting, and violence the city has encountered.  It also allows peaceful assembly elsewhere.  This is analogous to "reasonable time, place, or manner restrictions"[11] that the Supreme Court has upheld

---

[10] Speaking of fundamentals, one wonders where Sasso has standing.  The Supreme Court generally forbids taxpayer standing against the federal government because the taxpayer is so far removed from the expenditure. *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923) ("But the relation of a taxpayer of the United States to the federal government is very different.  His interest in the moneys of the treasury—partly realized from taxation and partly from other sources—is shared with millions of others, is comparatively minute and indeterminable, and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.").  More recently in *DaimlerChrysler Corp. v. Cuno*, the Supreme Court did not question the plaintiff's municipal taxpayer standing, just that the relief sought was an injunction of state action instead of municipal action. 547 U.S. 332, 353 (2006).  The Supreme Court held that there generally is no state taxpayer standing. *Id.* at 346.  Accordingly, it appears that future development of this case may show that Sasso has municipal taxpayer standing.

[11] *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

against First Amendment challenges to local ordinances because "they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."[12] Other courts weighing the harms and public interest in analogous situations have held likewise.[13]

IV. Conclusion

In short, Sasso has not met his burden of showing irreparable harm to himself, that the harm of the curfew is worse than the harm of a temporary restraining order, or that the public interest favors the temporary restraining order. Accordingly, the Court denies the application.[14]

**IT IS SO ORDERED** this 1st day of June 2020.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[12] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

[13] *See, e.g., Nat'l Tank Truck Carriers, Inc. v. City of New York*, 677 F.2d 270, 274 (2d Cir. 1982) (upholding city ban and curfew on natural gas transportation because "these inconveniences are not unconstitutionally disproportionate when balanced against the public interest in avoiding a catastrophic accident in a densely populated urban area"); *Isbell v. City of Oklahoma City, Okla.*, 2011 WL 6152852, at *9 (W.D. Ok 2011) (upholding a park curfew and ban on camping because "the requested injunction would be contrary to a federal policy of permitting governments to set reasonable restrictions on the use of public forums within their jurisdiction"); *Moorhead v. Farrelly*, 723 F. Supp. 1109, 1115 (D.V.I. 1989) (upholding curfew over constitutional challenge because "the pleading does not establish that the irreparable harm he suffered outweighs the compelling public interest in the protection and safety of the residents").

[14] The Court has been advised by the clerk that the applicant has made multiple attempts to submit the filing fee though CM/ECF but has been unsuccessful. The Court has considered his application based on the clerk's representation that the plaintiff has made diligent efforts to pay the fee but is experiencing technical difficulties. The Court orders the plaintiff to submit the filing fee within one business day of the entry of this order.